United States District Court
Southern District of Texas
**ENTERED**
October 19, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal Case No. 2:20-CR-01143** |
| | § | |
| **ROLANDO JASSO** | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER ON MOTION FOR NEW TRIAL</u>

Defendant Rolando Jasso was found guilty by a jury of illegally reentering the United States following deportation. Jasso claims that he was born in Texas and is, therefore, a United States citizen. He now moves for a new trial. (Dkt. No. 64). Jasso alleges that the Court erred by not admitting a certificate of his baptism ("Baptismal Certificate") as an exhibit at trial. (*Id.* at 3). He asserts that withholding this evidence from the jury resulted in a fundamentally unfair trial. (*Id.*). After considering the Motion, the Response, (Dkt. No. 65), Jasso's Reply, (Dkt. No. 66), the record, and the applicable law, the Court **DENIES** Jasso's Motion.

## I.    BACKGROUND

On October 1, 2020, a State Trooper with the Texas Department of Public Safety made a traffic stop near Falfurrias, Texas. (Dkt. No. 74 at 199–200). He was unable to identify the passenger in the car, so the Trooper transported him to the Falfurrias Border Patrol Checkpoint to check his fingerprints. (*Id.* at 204). After doing so, the Border Patrol agents identified the passenger as the Defendant, Rolando Jasso. (*Id.* at 201, 208). The agents concluded that Jasso was a removable undocumented alien based on Jasso's prior removals, which appeared on his record. (*Id.* at 209–10).

Jasso was charged and indicted with the crime of illegally re-entering the United States following deportation.  (Dkt. No. 1); (Dkt. No. 5).  This crime only applies to aliens.  *See* 8 U.S.C. § 1326; (Dkt. No. 74 at 185).  At trial, Jasso's primary argument was that he is not an alien because he was actually born in Texas, not Mexico.  (Dkt. No. 74 at 193–97).  To refute that claim, the Government presented documentary and testimonial evidence that Jasso was born in Mexico, *see* (*Id.* at 191, 215) and (Dkt. No. 76 at 155–56), including Jasso's own prior statements to that effect. *(Id.* at 170–73).

But Jasso maintained that all of this evidence—including his own statements—stemmed from an inaccurate Mexican birth certificate obtained by Jasso's father seven years after Jasso's birth.  (Dkt. No. 74 at 195–96).  According to Jasso, he was not issued a birth certificate at birth because he was born in a house in Los Arrieros, Texas.  (*Id.* at 195).  Jasso claimed that approximately seven years after he was born, his father needed to obtain a birth certificate quickly in order to file a petition to bring the family to the United States.  (*Id.*).  Jasso alleges that his father did this because he could obtain a Mexican birth certificate faster than a Texas birth certificate.  (*Id.* at 195–96); (Dkt. No. 76 at 59).

## A.    THE BAPTISMAL CERTIFICATE

Jasso's mother was his sole witness at trial, and she testified that she gave birth to Jasso in Los Arrieros, Texas.  (Dkt. No. 76 at 51).  To strengthen her credibility and corroborate her testimony, Jasso sought to introduce the Baptismal Certificate issued by

a Mexican parish stating that Jasso was born in Los Arrieros, Texas.[1]  (Dkt. No. 32 at 3–4).  The Baptismal Certificate states that Jasso was baptized in the Parroquia de la Inmaculada Concepción on October 24, 1971.  It also includes Jasso's parents' names, his birth date, his godparents' names, the signature of the parish priest who issued the certificate, and the location of his birth (listed as Los Arrieros, Texas).  The Baptismal Certificate itself was not created at or near the time of Jasso's baptism; rather, it was created and issued on February 3, 2021—just before trial.  *See* (Dkt. No. 64 at 4); (Dkt. No. 65 at 3).

The Baptismal Certificate was accompanied by an "Affidavit of Regularly Conducted Activity" signed by the parish priest who issued the certificate.[2]  The affidavit states that the parish priest is "the person charged with keeping the records" at the parish, and that "[i]ncluded in those records are registries of persons baptized in this parish."  The affidavit affirms that the parish records reflect the baptism of Jasso, and the Baptismal Certificate is a "certificate of that baptism."  The affidavit goes on to state that "[i]t is the practice of this parish to make a record of every baptism performed in this parish[,]" that those records are "made at or near the time of the baptism" by someone "with knowledge of the baptism or by a person who received the information from a person with

---

[1]    In his Motion for New Trial, Jasso cites to his exhibits, including the Baptismal Certificate and the accompanying priest's affidavit, that were proffered at the close of trial.  The Clerk retains a copy of these exhibits, but there is no docket citation because the exhibits were not admitted into evidence.

[2]    In Jasso's Motion, he primarily argues that the Baptismal Certificate should have been admitted.  (Dkt. No. 64).  In some places in the Motion, however, Jasso refers to the "Affidavit of Regularly Conducted Activity" signed by the parish priest.  (*Id.* at 3).  The Court uses "Baptismal Certificate" as a shorthand for both the certificate itself and the accompanying affidavit.

knowledge of the baptism[,]" and that "[i]t is the practice of the parish to issue certificates of baptism from the records" made at or near the time of the baptism.  Finally, the affidavit states that the Baptismal Certificate "contains baptismal information registered during the normal course of the activities of [the] parish" and that the Baptismal Certificate "was made as part of the regularly conducted activities of [the] parish and is a true and accurate record."

### B.    THE FINAL PRETRIAL CONFERENCE

Before the final pretrial conference, Jasso filed several motions *in limine*, which included a request to preadmit the Baptismal Certificate.  (Dkt. No. 32).  Jasso argued that the Baptismal Certificate was a prior statement by a witness that is consistent with the witness's current testimony under Rule 801(d)(1)(B) of the Federal Rules of Evidence.  (*Id.* at 3–4).  Alternatively, Jasso argued that the Baptismal Certificate was admissible under the hearsay exception for "Records of Religious Organizations Concerning Personal or Family History," Fed. R. Evid. 803(11), or under the hearsay exception for "Certificates of Marriage, Baptism, and Similar Ceremonies," Fed. R. Evid. 803(12).  (Dkt. No. 32 at 4).  Jasso later filed a Brief Regarding Evidentiary Issues, in which he additionally argued that the Baptismal Certificate was admissible under the hearsay exception for "ancient documents."  (Dkt. No. 40 at 10); *see* Fed. R. Evid. 803(16).

At the final pretrial conference, notwithstanding the alternative arguments mentioned in his motion *in limine*, Jasso's counsel stated that he would only be offering the Baptismal Certificate to rehabilitate Jasso's mother if she was impeached by the prosecution under cross-examination.  (Dkt. No. 73 at 105, 113) ("I do not intend to offer

this unless Ms. Jasso testifies *because the relevance is that it is a prior consistent statement.*" (emphasis added)).  The Government objected to the admission of this evidence, but the Court overruled this objection, finding that the Baptismal Certificate was covered by Rule 801(d)(1)(B).  (*Id.* at 106–19).

To confirm the understanding of the Court and both Parties, the Court asked if Jasso's counsel was only offering the Baptismal Certificate if Jasso's mother took the stand.  (*Id.* at 105).  Jasso's counsel confirmed that was correct.  (*Id.* at 106).  The Court asked if the only reason Jasso wanted to use the Baptismal Certificate was to rehabilitate Jasso's mother with a prior consistent statement.  (*Id.* at 119).  Jasso's counsel said that was correct. (*Id.*).  The Court asked Jasso's counsel if he agreed that the Baptismal Certificate would not come in on direct examination of Jasso's mother.  (*Id.* at 120).  Jasso's counsel agreed.   (*Id.*).   Jasso's counsel also stated affirmatively that the Baptismal Certificate was "not offered simply as substantive evidence of where he was born.  *It's offered to rehabilitate a witness . . . .*"  (*Id.* at 113) (emphasis added).  The Court and the Government relied upon those assurances and, as a result, the Court ruled that the Baptismal Certificate would be admissible only under Rule 801(d)(1)(B) as a prior consistent statement.  (*Id.* at 118–19).

## C.   THE TRIAL

The issue of the Baptismal Certificate resurfaced on the second day of trial.  That day, Jasso called his mother to testify.  (Dkt. No. 76 at 48).  The Baptismal Certificate was not mentioned during the direct examination of Jasso's mother consistent with the assurances made by Jasso's counsel at the final pretrial conference.  *See* (*Id.* at 48–63).  On

cross-examination, as Jasso put it, "the Government assiduously avoided asking Ms. Jasso any questions about prior statements she had made that her son was born in Mexico." (Dkt. No. 64 at 2); *see* (Dkt. No. 76 at 64–67). As a result, Jasso was unable to offer the Baptismal Certificate on redirect to rehabilitate Jasso's mother using a prior consistent statement.

During Jasso's redirect examination of Jasso's mother, Jasso's counsel asked to approach the bench. (Dkt. No. 76 at 70). Counsel stated, "I would like to *ask her about* the . . . baptism certificate . . . ." (*Id.* at 70–71) (emphasis added). The Court asked whether this was for rehabilitation, and Jasso's counsel said that it was offered "to show that this isn't the first time she's come and said this." (*Id.* at 6).

After some discussion, the Court permitted Jasso's counsel to ask Jasso's mother whether she had informed the parish priest that Jasso was born in Texas when he was baptized. (*Id.* at 72–73). Jasso's counsel asked Jasso's mother (1) if she told the priest where Jasso was born at that time, (2) whether that was information the parish required, and (3) where she told the priest Jasso was born. (*Id.* at 75). She responded yes to the first two questions and testified that she told the priest that Jasso was born in Los Arrieros, Texas. (*Id.*).

After the close of evidence, the issue as to the Baptismal Certificate's admissibility was raised again. When Jasso was unable to use the Baptismal Certificate to rehabilitate Jasso's mother with a prior consistent statement because the Government elected not to question Jasso's mother about her past statements concerning her son's birthplace, Jasso's counsel stated that he wanted "to make sure that the baptismal certificate is also in the

Record as a proffer." (*Id.* at 138). The Government objected to the Baptismal Certificate being admitted as substantive evidence. (*Id.* at 138–39). The Court noted that Jasso's mother had already testified that she told the priest that Jasso was born in Texas. (*Id.* at 140). The jury ultimately found Jasso guilty. (Dkt. No. 59). Jasso timely filed this Motion, which is ripe for review.

## II.    DISCUSSION

### A.    STANDARD OF REVIEW

Rule 33 of the Federal Rules of Criminal Procedure permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Fifth Circuit has explained that "justice so requires" wherever there exists an "error of sufficient magnitude to require reversal on appeal." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004). And "[a]lthough grant or denial of the motion is entrusted to the sound discretion of the judge, motions for new trial are not favored, and are granted only with great caution." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997). That is, a district court should grant a new trial only in "exceptional cases," which include situations involving a "miscarriage of justice." *United States v. Robertson*, 110 F.3d 1113, 1120 n.11 (5th Cir. 1997). "In determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial . . . ." *United States v. Herrera*, 559 F.3d 296, 302 (5th Cir. 2009) (quoting *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)). An erroneous evidentiary ruling is a possible ground for granting a new trial. *See United States v. Schnitzer*, 145 F.3d 721, 730–31 (5th Cir. 1998).

### B.   JASSO DID NOT PRESERVE A CLAIM OF ERROR

In this case, before the Court takes up the question of whether there was an erroneous evidentiary ruling, it is necessary to determine whether there was an evidentiary issue preserved *at all*.   In his Motion, Jasso argues that the Baptismal Certificate was admissible under Rules 803(11), 803(12), and 803(16) of the Federal Rules of Evidence (collectively, the "Rule 803 Hearsay Exceptions").   (Dkt. No. 64 at 4).   He argues further that the trial was manifestly unjust because the jury did not see the Baptismal Certificate and, therefore, justice requires that a new trial be granted.   (*Id.* at 3–6).   But as the Government correctly points out, Jasso agreed that the Baptismal Certificate would *only* be offered and admitted for the limited purpose of showing that Jasso's mother's statement that Jasso was born in Texas was not recently fabricated.   (Dkt. No. 65 at 4–5); (Dkt. No. 73 at 113).   Therefore, before reaching the question of whether the Baptismal Certificate is admissible, the Court must resolve the Parties' dispute about whether Jasso ever offered the Baptismal Certificate under the Rule 803 Hearsay Exceptions.

Though it is cited by neither party, Federal Rule of Evidence 103(a) governs whether a party has preserved a claim of error on an evidentiary ruling.   Fed. R. Evid. 103(a).   To preserve a claim of error in this case, Jasso must show (1) that there was "a ruling to admit or exclude evidence," (2) that ruling was in "error," (3) the error affected "a substantial right" of Jasso, and (4) Jasso informed the Court of the evidence's substance either by an offer of proof or because the substance of the evidence was "apparent from

the context."³  *Id.*  Federal Rule of Criminal Procedure 51(b) supplements Rule 103(a), stating that "[a] party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."  Fed. R. Crim. P. 51(b).

Looking to the requirements of Rule 103(a), the Court need not reach the issues of whether a "substantial right" of Jasso was affected or whether Jasso informed the Court of the Baptismal Certificate's substance because the Court finds there was no "ruling to admit or exclude" the Baptismal Certificate under the Rule 803 Hearsay Exceptions.  *See* Fed. R. Evid. 103(a).  There was no ruling because Jasso never sought a ruling on the admissibility of the Baptismal Certificate under the Rule 803 Hearsay Exceptions. Additionally, Jasso did not object to the Court's ruling that the Baptismal Certificate was admissible only to rehabilitate Jasso's mother using a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B).  *See* (Dkt. No. 73 at 118–19).  In fact, Jasso did not just fail to object to this ruling—Jasso agreed that this was the very ruling he wanted.  (*Id.*

---

³    The full text of Rule 103(a) is as follows:

   **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:

   **(1)** if the ruling admits evidence, a party, on the record:

   **(A)** timely objects or moves to strike; and

   **(B)** states the specific ground, unless it was apparent from the context; or

   **(2)** if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

at 119).  The Court asked Jasso's counsel, "the only reason you would want to use [the Baptismal Certificate] is to rehabilitate [Jasso's mother] with a prior consistent statement; is that correct . . . ?"  (*Id.*).  Jasso's counsel responded, "That's correct, Your Honor."  (*Id.*).

In his Motion, Jasso cites two instances in which he argues that he "sought to introduce as evidence a baptismal certificate[.]"  (Dkt. No. 64 at 2).  The first instance is Jasso's motion *in limine*, and the second instance is Jasso's proffer at the close of trial.  (*Id.* at 2–3).  The Court construes Jasso's Motion to argue that these are the two instances when Jasso sought to introduce the Baptismal Certificate not just to rehabilitate Jasso's mother using a prior consistent statement under Rule 801(d)(1)(B), but additionally under the Rule 803 Hearsay Exceptions.  For the reasons described below, the Court finds that neither of these instances were sufficient to preserve Jasso's claim of error because Jasso never sought a ruling on the Rule 803 Hearsay Exceptions; rather, Jasso agreed to and requested the Court's ruling that the Baptismal Certificate be admissible *only* under Rule 801(d)(1)(B) and, naturally, did not object.

### 1.   Motion *in limine*

Jasso cites his motion *in limine* as the first instance in which he "sought to introduce as evidence a baptismal certificate[.]"  (Dkt. No. 64 at 2).  After stating that Jasso "intends to offer the [Baptismal Certificate] pursuant to Federal Rule of Evidence 801(d)(1)(B), as a prior statement by the witness that is consistent with her current testimony[,]" the motion *in limine* states "[t]he [Baptismal Certificate] also is admissible under Federal Rule of Evidence 803(11) and (12)."  (Dkt. No. 32 at 4).

The Court set a final pretrial conference to address, among other things, the Parties' motions *in limine*. (Dkt. No. 73). Though Jasso's motion *in limine* argued that the Baptismal Certificate was alternatively admissible under the Rule 803 Hearsay Exceptions,[4] Jasso clearly abandoned these arguments at the final pretrial conference. As the Government points out in its Response, (Dkt. No. 65 at 4–5), when the Court heard argument on Jasso's motion *in limine* during the final pretrial conference, Jasso argued solely that the Baptismal Certificate would be offered to show a prior consistent statement. (Dkt. No. 73 at 105, 113). Jasso made it clear that this was the only way he wanted to use the evidence, stating, "it's not offered simply as substantive evidence of where he was born. It's offered to rehabilitate a witness . . . ." (*Id.* at 113). The Court repeatedly confirmed this understanding with Jasso, and not once did Jasso object or make an alternative argument to introduce the Baptismal Certificate under the Rule 803 Hearsay Exceptions.[5] (*Id.* at 105, 113, 118–20).

---

[4]     Jasso's motion *in limine* only raised Rules 803(11) and 803(12) as alternative hearsay exceptions for the Baptismal Certificate. (Dkt. No. 32 at 4). Jasso did not raise Rule 803(16) as an alternative hearsay exception until his Brief Regarding Evidentiary Issues filed after the final pretrial conference but before trial. (Dkt. No. 40 at 10). Though the Rule 803(16) argument was first raised after the final pretrial conference, Jasso still failed to preserve this claim of error at trial for the same reasons he failed to preserve his claims of error under Rules 803(11) and 803(12) — he did not meet his burden to ask the Court for a ruling on these claims. This is discussed in greater detail below.

[5]     After careful review of the final pretrial conference transcript, the Court counts eight instances where the Court confirmed with Jasso's counsel that Jasso's counsel agreed that the Baptismal Certificate would only be offered and admissible for the limited purpose of rehabilitating Jasso's mother using a prior consistent statement. (Dkt. No. 73 at 105–06, 113, 118–20). Each time, Jasso's counsel expressly confirmed that the Court's understanding was correct. (*Id.*).

The only ruling the Court made on the admissibility of the Baptismal Certificate during the final pretrial conference was that it would be admissible to rehabilitate or corroborate Jasso's mother using a prior consistent statement under Rule 801(d)(1)(B). (*Id.* at 118–19). Jasso did not object to this ruling because, at least at the time, this was Jasso's sole purpose for introducing the Baptismal Certificate. (*Id.* at 105, 113). And the Government and the Court relied upon that assurance.[6]

Rule 103 of the Federal Rules of Evidence requires a "ruling to admit or exclude evidence" as a prerequisite to preserving a claim of error. Fed. R. Evid. 103(a). The Court did not issue a ruling on the admissibility of the Baptismal Certificate under the Rule 803 Hearsay Exceptions; thus, Jasso failed to preserve a claim of error based on what occurred during the final pretrial conference. *Id.*; *cf. United States v. Thomas*, 429 F.2d 407, 408 (5th Cir. 1970) (per curiam) ("An appellate court will not review actions of omission or commission by a trial court unless the defendant makes known to the court the action which he desires the court to take or his objection to the action taken by the court and the grounds therefor."); *United States v. Potts*, 644 F.3d 233, 236 (5th Cir. 2011) (finding there

---

[6] To be sure, Jasso admits that the Government "assiduously avoided asking Ms. Jasso any questions about prior statements she had made that her son was born in Mexico." (Dkt. No. 64 at 2). The Government avoided the topic when cross-examining Jasso's mother in order to prevent the Baptismal Certificate from being introduced, which was what Jasso *expressly requested* in the final pretrial conference. (*Id.* at 6) ("At trial, the Government refrained from cross-examining Ms. Jasso about prior statements she had made that contradicted the information in the certificate, *clearly to avoid opening a door where the document could be admitted* based on the Court's ruling, even though those prior statements were the most damning impeachment evidence it had against the witness." (emphasis added)). So, it clearly impacted the trial strategy of the Government. And then, after the Government completed its cross-examination, Jasso sought to introduce the evidence anyway. This is contrary to the express agreement and understanding of the Parties and the Court that was confirmed and reconfirmed many times prior to trial.

was no objection and therefore no ruling, so the defendant failed to preserve error); *Foster v. Ford Motor Co.*, 621 F.2d 715, 721 (5th Cir. 1980) ("Since plaintiffs' counsel specified the precise purpose for which the [evidence] was offered, plaintiffs cannot claim on appeal that the [evidence] might have been admissible for some other purpose.").[7]  The burden of obtaining a ruling from the Court to preserve a claim of error is on Jasso.  *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("The amendment imposes the obligation on counsel to clarify whether an *in limine* or other evidentiary ruling is definitive when there is doubt on that point."); *United States v. Jackson*, 485 F.2d 300, 303 (7th Cir. 1973) ("It was the moving party's obligation, however, to insist upon a ruling on the motion, and the fact that counsel allowed the argument to divert the judge from a ruling on the particular motion cannot be said to be error.").  Because Jasso did not request a ruling on the admissibility of the Baptismal Certificate under the Rule 803 Hearsay Exceptions and did not object to the Court's ruling that the Baptismal Certificate was admissible only under Rule 801(d)(1)(B), Jasso did not meet his burden.

## 2.    Proffer at the Close of Trial

At trial, the Government chose not to cross-examine Jasso's mother with respect to statements she had made about Jasso's birthplace.  *See* (Dkt. No. 76 at 48–63).  Based

---

[7]    Though *Foster* is a civil case, it is still relevant to Rule 103 analyses in criminal cases like this one.  *Foster* also relies on Rule 103, as well as Rule 46 of the Federal Rules of Civil Procedure, which, like Rule 51 of the Federal Rules of Criminal Procedure, is designed to supplement Rule 103.  Fed. R. Crim. P. 51 advisory committee's note to 1944 Adoption ("This rule is practically identical with rule 46 of the Federal Rules of Civil Procedure . . . .  It relates to a matter of trial practice which should be the same in civil and criminal cases in the interest of avoiding confusion.").

on the Court's ruling on Jasso's motion *in limine* and the agreement of the Parties, this meant that Jasso had no basis to question Jasso's mother about the contents of the Baptismal Certificate.  Nevertheless, Jasso's counsel requested a bench conference and said that he wanted to "ask [Jasso's mother] about the time—baptism certificate but I don't want to do that unless I know whether the Court would allow it."  (*Id.* at 70–71).  Once again, Jasso's counsel did not mention introducing the Baptismal Certificate under the Rule 803 Hearsay Exceptions.[8]  Despite the Court's initial ruling and the agreement of the Parties that this questioning would only be allowed if the Government tried to claim that Jasso's mother recently fabricated her testimony that he was born in Texas, the Court permitted Jasso's counsel to ask her about his baptism and what she told the parish priest about where Jasso was born.  (Dkt. No. 76 at 72–73).  Once again, Jasso failed to raise his arguments for substantive admission of the Baptismal Certificate under the Rule 803 Hearsay Exceptions and asked only to question Jasso's mother as to its contents.  (*Id.* at 70–71).  As a result, the Court did not rule on whether the Baptismal Certificate was admissible under the Rule 803 Hearsay Exceptions.

---

[8]    Following a segment in the trial transcript of this bench conference marked "indiscernible," Jasso states, "Well I mean maybe the jury would trust her more if they saw it in writing."  (Dkt. No. 76 at 72).  This passing statement alone is insufficient to constitute an introduction of the Baptismal Certificate under the Rule 803 Hearsay Exceptions by Jasso.  *See Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978) (per curiam) ("Defendant's vague protestations against excluding the evidence were insufficient to assist the trial judge in making a rational determination of its admissibility.").  Furthermore, the burden is on the party seeking to introduce the evidence to get a ruling from the Court.  Fed. R. Evid. 103 advisory committee's note to 2000 amendment; *see Jackson*, 485 F.2d at 303.  Other than this statement, Jasso's counsel expressly asked only to *question* Jasso's mother about the contents of the Baptismal Certificate during the bench conference.  (Dkt. No. 76 at 70–73).

After the close of trial, Jasso made a proffer, also known as an offer of proof, of the Baptismal Certificate.[9]  (Dkt. No. 76 at 138).  "'The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful.' . . . A secondary purpose is to allow the trial court 'to reconsider a ruling in light of the actual evidence.'"  *Lucio v. Lumpkin*, 987 F.3d 451, 458 n.1 (5th Cir. 2021) (en banc) (quoting *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009)).  Rule 103(a) requires an offer of proof to preserve a claim of error based on a ruling that excludes evidence (unless the substance of the proffered evidence is apparent from the context). Fed. R. Evid. 103(a)(2).

Jasso's offer of proof is ineffective because there is no error to preserve since he never moved to introduce the Baptismal Certificate in the first place.  *See* Fed. R. Evid. 103(a); 21 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5040 (2d ed. 2021) ("[U]nless the party 'offers the proof' in the nontechnical sense, the trial court commits no error that can be preserved with a 'formal offer of proof.'").  Given Jasso's position on the Baptismal Certificate both before and throughout the trial, it is unclear what error Jasso's "proffer" at the close of trial was intended to preserve.  As has been discussed, the Court never ruled that the Baptismal Certificate was inadmissible under the Rule 803 Hearsay Exceptions because Jasso only asserted that he was introducing the Baptismal Certificate under Rule 801(d)(1)(B).  (Dkt. No. 73 at 105, 113). The Court construed Jasso's offer of proof at the close of trial as attempting to preserve

---

[9]    Specifically, Jasso's counsel stated, "Your Honor, . . . I do want to make sure that that baptismal certificate is also in the Record as a proffer."  (Dkt. No. 76 at 138).

the alleged error of failing to admit the Baptismal Certificate as a prior consistent statement (since the Government never suggested during cross-examination that Jasso's mother recently fabricated her statement).

Whatever its intended purpose, the offer of proof could not have preserved an error on the Baptismal Certificate's admissibility under the Rule 803 Hearsay Exceptions because Jasso never sought to introduce the Baptismal Certificate under these exceptions during trial.  Jasso also did not object to any of the Court's rulings with respect to the admissibility of the Baptismal Certificate.  *See Potts*, 644 F.3d at 236.  Jasso only approached the bench and asked if he could *question* Jasso's mother about the Baptismal Certificate—and that request was granted by the Court.  (Dkt. No. 76 at 70–71).  Thus, under Rule 103(a), Jasso has failed to preserve a claim of error.  *Cf. United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005) (reviewing for plain error only when the defendant did not object to an evidentiary ruling until his motion for new trial).

### 3.    <u>There was no plain error</u>

Finally, Rule 103(e) states that "[a] court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."  Fed. R. Evid. 103(e).  A plain error is one that "affects substantial rights."  Fed. R. Crim. P. 52(b).  "To demonstrate plain error, the defendant must show that there was error, it was plain, and it affected his or her substantial rights."  *United States v. Ahmed*, 794 F. App'x 362, 366 (5th Cir. 2019) (per curiam) (quoting *United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013)).  Substantial rights are affected "if the defendant 'shows a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'"  *Id.* (quoting

*Molina-Martinez v. United States*, 578 U.S. 189, ____, 136 S.Ct. 1338, 1343, 194 L.Ed.2d 444 (2016)) (cleaned up).

The Court finds that there is no plain error.  As discussed in greater detail below, the Baptismal Certificate would have been inadmissible under the Rule 803 Hearsay Exceptions if Jasso had introduced it under those rules.  Jasso's substantial rights also were not affected because there is no reasonable probability that showing the Baptismal Certificate to the jury would have changed the outcome.  The Government presented considerable evidence, including Jasso's own statements, that Jasso was born in Mexico. *See* (Dkt. No. 74 at 191, 215) (Dkt. No. 76 at 155–56, 170–73).  Additionally, Jasso's mother testified that she took Jasso to be baptized shortly after his birth and, at that time, she told the priest that he was born in Texas.  (Dkt. No. 76 at 75).  That is the same information the Baptismal Certificate would have conveyed.  It was not plain error that the jury did not see the Baptismal Certificate, and as a result, the Court concludes that the claimed error alleged by Jasso is insufficient to grant a new trial.

### C.   THE BAPTISMAL CERTIFICATE IS NOT COVERED BY ANY OF THE HEARSAY EXCEPTIONS ARTICULATED BY JASSO

The Court's conclusion that Jasso failed to preserve a claim of error with respect to the admissibility of the Baptismal Certificate under the Rule 803 Hearsay Exceptions is sufficient to deny Jasso's Motion for New Trial.  But even if presenting the Baptismal Certificate to the jury might have changed the outcome, there was still no error because the Rule 803 Hearsay Exceptions do not cover the Baptismal Certificate.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *United States v. Piper*, 912 F.3d 847, 855 (5th Cir. 2019) (per curiam). "Hearsay is not admissible unless a statute or rule provides otherwise." *Id.*; *see* Fed. R. Evid. 802. In their briefing, the Parties do not dispute that the Baptismal Certificate is only admissible if a hearsay exception or exclusion applies.[10]  The only question is whether the Baptismal Certificate is covered by the Rule 803 Hearsay Exceptions put forth by Jasso in his Motion.

The Rule 803 Hearsay Exceptions that Jasso argues apply to the Baptismal Certificate are: (1) the Rule 803(11) exception for Records of Religious Organizations Concerning Personal or Family History, (2) the Rule 803(12) exception for Certificates of Marriage, Baptism, and Similar Ceremonies, and (3) the Rule 803(16) exception for Statements in Ancient Documents.  (Dkt. No. 64 at 4).  The Court addresses each of these arguments in turn.

### 1.   Rule 803(11): Records of Religious Organizations Concerning Personal or Family History

First, Jasso argues that the Baptismal Certificate is admissible under Rule 803(11) as a record of a religious organization concerning personal or family history.  (Dkt. No. 64 at 4).  Stated in its entirety, this rule applies to "[a] statement of birth, legitimacy,

---

[10]    The Court previously found that the Baptismal Certificate was admissible to rehabilitate Jasso's mother using a prior consistent statement under Rule 801(d)(1)(B) of the Federal Rules of Evidence, which excludes such statements from the definition of hearsay.  (Dkt. No. 73 at 118–19); Fed. R. Evid. 801(d)(1)(B).  For purposes of this Motion, the Parties do not dispute this ruling, though the Court acknowledges the Government's earlier objection to this ruling.  (Dkt. No. 73 at 106).  The only question presented by this Motion for New Trial is whether the Baptismal Certificate is covered by the Rule 803 Hearsay Exceptions.

ancestry, marriage, divorce, death, relationship by blood or marriage, or similar facts of personal or family history, contained in a regularly kept record of a religious organization." Fed. R. Evid. 803(11).

Given the "dearth of case law" applying Rule 803(11), 30B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6913 (2021 ed.), the Court's analysis is primarily based on the rule's text. The rule applies to (1) a statement of "birth . . . or similar facts of personal or family history," (2) contained in a regularly kept record, (3) of a religious organization. Fed. R. Evid. 803(11). The statement in the Baptismal Certificate that Jasso was born in Los Arrieros, Texas, is a statement of birth, and the Parroquia de la Inmaculada Concepción is a religious organization. The only question is whether the statement of Jasso's birthplace in the Baptismal Certificate is contained in a regularly kept record. Though the statement appears to *come from* a regularly kept record (the priest's affidavit states that "[i]t is the practice of the parish to issue certificates of baptism from the records kept), the Baptismal Certificate *itself* is not a regularly kept record. As Jasso acknowledges, it is an "abstract" of the parish's original record. (Dkt. No. 64 at 4).

Again, the case law is sparse. In a case about whether a prisoner could obtain certain religious materials, a magistrate judge in the Eastern District of Virginia held that an affidavit attesting that a particular religious organization was legitimate did not qualify as a regularly kept record under Rule 803(11). *Versatile v. Johnson*, No. 3:09CV120, 2011 WL 1167440, at *2 (E.D. Va. Mar. 28, 2011). Concerning the priest's affidavit that accompanied the Baptismal Certificate, the Court similarly finds that Rule 803(11) does not apply because the priest's affidavit is not a regularly kept record.

19

As for the Baptismal Certificate itself, the question is closer.  Unlike the affidavit in *Versatile*, the priest's affidavit attests that "[i]t is the practice of the parish to issue certificates of baptism from the records kept" and the Baptismal Certificate "was made as part of the regularly conducted activities of this parish[.]"  It may be the parish's practice to issue baptismal certificates based on the regularly kept records, but Rule 803(11) only applies to statements "*contained in* a regularly kept record."  Fed. R. Evid. 803(11) (emphasis added).  The Baptismal Certificate, offered here in the form of an abstract, is not a record regularly kept by the parish even if it is the parish's standard practice to issue such certificates.  Because the statements that Jasso sought to introduce are not contained in a regularly kept record of a religious organization, this hearsay exception does not apply.

### 2.   Rule 803(12): Certificates of Marriage, Baptism, and Similar Ceremonies

Next, Jasso claims that the Baptismal Certificate is "arguably" admissible under Rule 803(12) as a certificate of baptism.  (Dkt. No. 64 at 4).  This rule applies to statements contained in a certificate "(A) made by a person who is authorized by a religious organization or by law to perform the [baptism]; (B) attesting that the person performed [the baptism]; and (C) purporting to have been issued at the time of the [baptism] or within a reasonable time after it."  Fed. R. Evid. 803(12).

This exception to the hearsay rule does not apply to the Baptismal Certificate for two reasons.  First, the creator of the certificate must attest that he is the one who performed the baptism.  *Id.* at 803(12)(B).  The parish priest who created the Baptismal

Certificate attested that he is the person charged with keeping the records at the parish; however, he does not claim to be the person who performed Jasso's baptism.  Second, the certificate must "purport[] to have been issued at the time of the [baptism] or within a reasonable time after it."  *Id.* at 803(12)(C).  The Baptismal Certificate itself states that it was issued on February 3, 2021—nearly fifty years after the baptism was performed.  Because the Baptismal Certificate is not covered by the text of Rule 803(12) for these reasons, this hearsay exception does not apply.

### 3.      Rule 803(16): Statements in Ancient Documents

Finally, Jasso argues that the Baptismal Certificate is admissible under Rule 803(16) as an ancient document.  (Dkt. No. 64 at 4).  This rule applies to a "statement in a document that was prepared before January 1, 1998, and whose authenticity is established."  Fed. R. Evid. 803(16).  Jasso acknowledges that the certificate itself was "recently created," but he argues that the ancient document exception applies because "it is an abstract of a document that was created 50 years ago."  (Dkt. No. 64 at 4).  The Court rejects this novel argument.  The text of Rule 803(16) does not apply to "abstracts" of records created before 1998.  Instead, the rule applies to "statement[s] in . . . document[s] that [were] prepared before" 1998.  Fed. R. Evid. 803(16).  Thus, this hearsay exception does not apply.

Jasso further argues that the Baptismal Certificate is relevant, reliable evidence to prove Jasso's birthplace and to corroborate Jasso's mother's testimony.  (Dkt. No. 64 at 4–5).  This could be true.  But even relevant evidence is inadmissible if it is excluded by a

rule of evidence.  Because the Rule 803 Hearsay Exceptions do not apply to the Baptismal Certificate, there was no error.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that no miscarriage of justice occurred because the Baptismal Certificate was not presented to the jury.  The Parties agreed before trial about how the Baptismal Certificate would be used at trial.  That agreement never changed.  At trial, Jasso only asked to question Jasso's mother about what she told the priest on redirect, which the Court allowed.  Jasso failed to preserve his claim of error and, regardless, the Baptismal Certificate is not admissible under the Rule 803 Hearsay Exceptions.  The Court therefore **DENIES** Jasso's Motion for New Trial.

It is SO ORDERED.

Signed on October 19, 2021.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

22